**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| IN RE<br>EX PARTE APPLICATION<br>OF GENERAL RETIREMENT AND<br>SOCIAL INSURANCE AUTHORITY<br>FOR JUDICIAL ASSISTANCE TO<br>OBTAIN DISCOVERY FOR USE<br>IN FOREIGN PROCEEDINGS<br>PURSUANT TO 28 U.S.C. § 1782 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO.: 7:24-MC-00002 (WLS) |

**ORDER**

Before the Court is Mark E. Williams and Wellspring Capital Group, Inc.'s ("the Wellspring Parties") Motion to Vacate and to Quash Subpoena (Doc. 15). For the reasons discussed below, the Motion is **DENIED**.

## I. BACKGROUND

### A. Procedural Background

Petitioner General Retirement and Social Insurance Authority ("GRSIA") initiated this matter on December 23, 2024, by filing an *Ex Parte* Application for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (Doc. 1). The Application sought to obtain bank records from the Wellspring Parties' accounts at Thomasville National Bank ("TNB") for use in two pending lawsuits filed by GRSIA in the Cayman Islands. The Court granted the Application on May 15, 2025, and authorized a subpoena to be directed to TNB for documents related to bank accounts held by the Wellspring Parties. (Doc. 11). The subpoena permitted discovery of the following:

> [I]nformation and documents relating to the bank accounts held by Mark Eric Williams and Wellspring Capital Group, Inc. at TNB, including account opening documentation, transaction information for all deposits and withdrawals since February 1, 2019, know-your-customer information regarding the accounts, and communications between TNB and Williams or other authorized account holder representatives about the Wellspring account.

(*Id.* at 6).

The Wellspring Parties filed a combined motion to intervene, to vacate the Court's Order granting GRSIA's Application, and to quash the subpoena. (Doc. 15). GRSIA filed a Response (Doc. 17), and the Wellspring Parties filed a Reply (Doc. 19). The Court granted the motion to intervene, (Doc. 20), and set a hearing on the motion to vacate and quash subpoena. (Doc. 21). A hearing was held on December 3, 2025. (Doc. 25). As such, the Motion is fully briefed and ripe for decision.

**B. Factual Background**

GRSIA is an enterprise owned by the State of Qatar and is responsible for administering the Qatari social security system. (Doc. 1-1 at 3). It is one of eleven limited partners of the Port Fund, L.P. (the "Port Fund"), a Cayman private equity fund established in 2007. (*Id.* at 1).

The Cayman litigation at issue in this matter concerns GRSIA's investment in the Port Fund from which GRSIA claims the fund's management diverted millions of dollars, including monies owed to GRSIA, through "improper insider transactions, self-dealing, and fraud[]" for their own enrichment. (Doc. 1-1 at 6). One of the Port Fund's managers is Mark E. Williams who served as Director of Investments of the Port Fund as well as a director, officer, or shareholder for various entities related to the Port Fund. (*Id.* at 10). GRSIA claims that in February 2019, Williams caused Port Link GP, the Port Fund's general partner, to transfer approximately $60 million to a bank account at TNB held by Wellspring, a corporation controlled entirely by Williams. (*Id.* at 9). Indeed, GRSIA claims that Wellspring's sole shareholder is Mark Williams's living trust, and that Williams was the Chief Executive Officer, Chief Financial Officer, President, Vice-President, Treasurer, and Secretary of Wellspring. (*Id.* at 10).

In October of 2020, two of the Port Fund's other limited partners commenced legal proceedings in the Grand Court of the Cayman Islands against Port Link GP, the Wellspring Parties, and others. (Doc. 15-1 at 7). A second action with substantially similar claims and allegations was initiated the following year against the Port Fund and Port Link GP's former counsel, Walkers and Walkers (Dubai) LLP. (*Id.* at 7–8). These cases, referred to herein as *Port*

*Fund I* and *Port Fund II*, respectively, also involve allegations that the defendants in those cases misappropriated money from the Port Fund. (*Id.* at 7).

In December of 2021, GRSIA filed a lawsuit in the Grand Court of the Cayman Islands against Walkers and Walkers, asserting similar claims to those asserted in *Port Fund II*. (Doc. 15-1 at 8). Then, in March of 2022, GRSIA filed another lawsuit against Port Link GP, the Wellspring Parties, and others, asserting similar claims as those in *Port Fund I*. (*Id.*) For ease of reference, the Court refers to GRSIA's Cayman cases as *Port Fund III* and *Port Fund IV*, respectively.

Given the substantial overlap between the defendants and claims asserted in *Port Fund I* and *Port Fund IV*, GRSIA was given the option to either (1) consent to a stay of the proceedings in *Port Fund IV* and be bound by the judgment in *Port Fund I*, or (2) participate in the *Port Fund I* and *II* proceedings and have all three cases managed together. (Doc. 15-1 at 9); (Doc. 15-4 ¶¶ 19–20). On August 1, 2024, GRSIA chose the first option and consented to a stay of *Port Fund IV* pending the disposition of *Port Fund I*. (Doc. 15-10). The Grand Court's consent order (Doc. 15-10) provides in relevant part:

> Nothing in this order shall prejudice [GRSIA's] right to pursue its claims in [*Port Fund IV*] or to apply for interim relief against some or all of the defendants in [*Port Fund IV*] following (a) the lifting of the stay (for any reason) in [*Port Fund IV*] or (b) determination of [*Port Fund I*], save that no party to [*Port Fund IV*] will be permitted to re-try or re-litigate issues of fact or law which have already been determined in [*Port Fund I*] and/or [*Port Fund II*].

(*Id.* at 2–3). The order further provided that GRSIA would have the right to request documents filed in *Port Fund I* and attend all hearings and the trial. (*Id.* at 3). However, GRSIA would "not be permitted to present written or oral submissions in the course of [*Port Fund I*], including by writing letters to the [Grand] Court[,]" except that GRSIA would be allowed "to be heard as to the form of relief (if any) to be granted" if the defendants were found liable at the trial of *Port Fund I*. (*Id.* at 3–4). And the order prohibited the *Port Fund I* defendants from agreeing to a settlement or compromise without first providing notice to GRSIA. (*Id.* at 3).

## II. <u>LAW AND ANALYSIS</u>

Section 1782 allows district courts to assist interested parties in foreign legal proceedings in obtaining documents and other tangible evidence from entities or individuals

within a district court's jurisdiction. *See* 28 U.S.C. § 1782. Courts have the authority to grant an application if four statutory requirements are met: "(1) the request is 'made by a foreign or international tribunal, or by any interested person'; (2) the request seeks testimonial or documentary evidence; (3) the requested evidence is 'for use in a proceeding in a foreign or international tribunal; and (4) the person from whom discovery is sought . . . reside[s] or [is] found in the district of the district court ruling on the application for assistance.'" *Gonzalez v. Verfruco Foods, Inc.*, No. 21-12922, 2023 WL 1794391, at *2 (11th Cir. Feb. 7, 2023) (quoting *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007)). If these factors are met, a court may, but is not required to, grant relief. In deciding whether to grant an application, courts next consider the four discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices*, Inc., 542 U.S. 241 (2004). The *Intel* factors include:

1. Whether the person from whom discovery is sought is a participant in the foreign proceeding;
2. The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
3. Whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
4. Whether the request is otherwise unduly intrusive or burdensome.

*In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65) (citation modified).

Here, the Court found that all four of § 1782's statutory requirements were met and that the *Intel* factors weighed in favor of granting GRSIA's application. (*See* Doc. 11).

**A. Motion to Vacate**

The Wellspring Parties move to vacate the Court's Order granting GRSIA's Application, arguing that the statutory "for use" requirement is not met because the evidence GRSIA seeks cannot be used in the Caymans litigation due to the terms of the Grand Court's consent order. (Doc. 15-1 at 13–17). GRSIA, on the other, contends that it could use the evidence for several purposes, notwithstanding the stays in *Port Fund III* and *IV*. (Doc. 17 at 10). The Parties also make arguments related to the *Intel* factors. The Court addresses the statutory requirements before proceedings to the *Intel* factors.

1. *"For Use" Requirement*

The only statutory requirement at issue is whether GRSIA meets the "for use" requirement. In determining whether GRSIA's application satisfies this requirement, the Court is guided by four principles relevant to the particular facts of this case. First, the evidence sought must be relevant to the subject matter of the proceeding and would "increase [GRSIA's] chances of success" in the Cayman litigation. *Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015). Second, GRSIA "must establish that [it] has the practical ability to inject the requested information into a foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). Third, a "proceeding" means the entire proceeding. *Mees*, 793 F.3d at 299; *see Rothe v. Aballi*, No. 20-12543, 2021 WL 4429814, at *2 (11th Cir. Sept. 27, 2021) ("The scope of § 1782 discovery is not strictly limited to the current posture of the foreign proceeding."). And fourth, "[§] 1782 does not require that every document discovered be actually used in the foreign proceeding." *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009).

There is no doubt that the TNB bank records GRSIA seeks to obtain are relevant to its claims in *Port Fund IV* and could potentially increase GRSIA's chances of success if the records revealed misappropriation of funds, fraud, or otherwise supported GRSIA's claims. Rather, the Wellspring Parties contend that GRSIA cannot inject any evidence it obtains from TNB into the *Port Fund III* or *IV* litigation because the consent order staying the cases prohibits GRSIA from giving or receiving discovery, presenting evidence to the Grand Court, progressing the case to trial, or making written or oral arguments to the Grand Court. (Doc. 15-1 at 14). While it is true the consent order limits GRSIA's litigation rights, the Court disagrees that GRSIA has no ability to use the information it seeks in the Application.

First, as GRSIA points out, it could use the information it seeks to decide whether to apply to lift the stay in *Port Fund IV*, which would then allow GRSIA to amend its claims or seek an injunction. (Doc. 17 at 10). Nothing in the consent order prohibits GRSIA from using, or more specifically actually submitting, the information from TNB to the Grand Court in support of an application to lift the stay. And further, there is no requirement that GRSIA apply to lift the stay before it can petition this Court for the evidence it seeks. On the contrary, "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is

sought, but only that the evidence is eventually to be used in such a proceeding." *Intel*, 542 U.S. at 259. Put differently, the proceeding for which discovery is sought need only be "within reasonable contemplation." *Id.* And as the Second Circuit stated in *Mees*,

> "[E]ventual use in such a proceeding" plainly encompasses use at any point in the proceeding. And requiring an applicant to wait until the stage in the foreign proceeding at which the materials are to be used before applying for discovery under § 1782—which might entail multiple, separate applications—would be contrary to the statute's aim of "providing efficient means of assistance to participants in international litigation."

793 F.3d at 300 (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012)) (citation modified).

The Wellspring Parties cite *financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721 (E.D. Mich. 2018) to argue that the stay in *Port Fund IV* precludes a finding that the evidence GRSIA seeks can be used. (Doc. 15-1). In *financialright*, the district court found that the "for use" requirement was not satisfied because "the Irish Litigation has been stayed, pending judicial review of the trial court's jurisdiction to hear the case[,]" and therefore "there is no proceeding in reasonable prospect in which . . . discovery might serve a purpose or might be used[.]" 294 F. Supp. 3d at 371. But in that case, the Irish High Court stayed "any proceedings" pending such review, and the High Court's order "clearly prohibit[ed]" the Irish trial court from proceeding with the petitioner's case. *Id.* The same cannot be said for the proceedings at issue in the Port Fund cases. Although GRSIA's cases are in fact stayed, the closely related cases, *Port Fund I* and *II* are ongoing. Most significantly, the consent order staying *Port Fund IV* permits, and under certain circumstances requires, GRSIA's involvement in the litigation. (*See* Doc. 15-10). The consent order also granted certain, albeit limited, rights as to GRSIA's participation. This posture is different from the unequivocal suspension of the proceedings in *financialright* pending resolution of a threshold jurisdictional question. Thus, *financialright* is distinguishable from the facts of this case, and the Wellspring Parties' reliance on that decision is not persuasive.

Second, GRSIA will have the right to be heard by the Grand Court regarding the relief that may be granted to the limited partners of the Port Fund if the defendants, including the Wellspring Parties, are found liable at trial. The consent order expressly permits GRSIA to

present "written and oral submissions" at that stage of the proceedings. (*See* Doc. 15-10 ¶¶ 5, 7). So, GRSIA could use the evidence from TNB in arguing for the relief it deems proper and just.[1] Similarly, GRSIA claims it has veto rights over any potential settlement.[2] (Doc. 17 at 10). Again, nothing in the consent order prohibits GRSIA from submitting or using any evidence it obtains from TNB during these stages of the proceedings. (Doc. 15-10 ¶ 6). Without such prohibition, GRSIA has a clear and practical ability to inject the information it seeks into the Cayman litigation.

At oral argument, counsel for the Wellspring Parties argued that each of the uses discussed above are speculative and theoretical, and therefore insufficient to satisfy the "for use" statutory requirement. Indeed, it is true that "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015). In this regard, a "district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014) (quoting *In re Letter of Request from the Crown Prosecution Serv. of the U.K.*, 870 F.2d 686, 692 (D.C. Cir. 1989)). From the Court's view, at least one of four things will likely happen: (1) the defendants will be found liable at the conclusion of the *Port Fund I* trial, and GRSIA will have the opportunity to present the evidence from TNB to the Grand Court for its consideration in determining the appropriate relief; (2) the parties to *Port Fund I* will agree to settle the case prior to a determination at trial, at which time GRSIA

[1] The Wellspring Parties contend, without supporting evidence, that GRSIA would only be permitted to make submissions regarding relief "based on evidence actually before the [Grand] Court in *Port Fund I* or *II*." (Doc. 19 at 7). However, this contention is unsupported by the language or the consent order or the cited declaration of the Wellspring Parties' Cayman counsel. (*See generally* Docs. 15-10 & 15-4).

[2] The Wellspring Parties dispute that GRSIA has "veto rights" over any potential settlement reached in *Port Fund I* and instead claim that GRSIA has only a right to receive notice of such settlement. (Doc. 19 at 7). Indeed, the consent order states that the defendants "shall not agree to any settlement or compromise in [*Port Fund I*] without giving [GRSIA] 30 working days' prior notice . . . ." (Doc. 15-10 ¶ 6). But neither the consent order nor the Wellspring Parties explain the impact, if any, that a settlement in *Port Fund I* may have on GRSIA's claims in *Port Fund III* or *IV*. Therefore, even if GRSIA does not enjoy "veto rights" over a potential settlement in *Port Fund I*, the Court cannot say that GRSIA would not be able to use the evidence from TNB for other purposes related to settlement negotiations, in the absence of evidence to the contrary.

may use the evidence from TNB in weighing in on any such settlement agreement; (3) GRSIA will use the evidence obtained from the subpoena in applying to lift the stay in *Port Fund IV*; or (4) the *Port Fund I* defendants will prevail at trial, in which case GRSIA may use the evidence to pursue its claims in *Port Fund IV* as to any issue of fact or law that is not determined in *Port Fund I* or *II*. In any of these scenarios, GRSIA has indicated that it intends to use the information it seeks from TNB. For these reasons, and upon full review and consideration of the Record in this case, the Court is satisfied that GRSIA's use of the information it seeks is more than speculative, and that GRSIA has shown reliable indications that the evidence will be used.

In sum, the Court finds that GRSIA has satisfied the "for use" requirement under § 1782. The evidence GRSIA seeks is relevant to its claims in *Port Fund IV*, GRSIA has the practical ability to inject the information into the litigation through the various methods described above, and the Court is satisfied that GRSIA has shown reliable indications that the evidence will be used. As such, the Wellspring Parties' Motion to Vacate is due to be denied.

*2.* Intel *Factors*

Having found that the statutory requirements of § 1782 are met, the Court next considers whether the *Intel* factors weigh in favor of denying the instant Motion to Vacate.

As to the first factor, the proposed witness in question is a bank located in the United States, which is not a participant in the Cayman litigation. (Doc. 1-1 at 22). "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. This is so because a foreign tribunal having jurisdiction over those appearing before it can itself order the production of evidence. *Id.* But this is not the case where, as here, the person or entity from whom discovery is sought is not a participant in the foreign proceedings and is not located in the jurisdiction where such proceedings are being held. *See id.* ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."). Because TNB is not a participant in the Cayman litigation and is not located in the Cayman Islands, the Court finds

that the first *Intel* factor weighs in favor of denying the Motion. *See Lopes v. Lopes*, 180 F. App'x 874, 877 (11th Cir. 2006).

As to the second factor, "the Court considers 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.'" *In re Pons*, 614 F. Supp. 3d 1134, 1150 (S.D. Fla. 2020) (quoting *Intel*, 542 at 254). "In examining the second *Intel* factor, the court looks at whether authoritative proof exists that a foreign court would reject evidence obtained with the aid of § 1782." *In re Rendon*, Case No. 1:20-mc-21152, 2020 WL 8771274, at *5 (S.D. Fla. Nov. 5, 2020). Here, the Wellspring Parties argue that this factor weighs against GRSIA's Application because *Port Fund IV* is stayed, and therefore, the Grand Court's "jurisdiction to consider such material is paused," meaning it "cannot even be asked to consider the documents in question, unless and until the stay is lifted." (Doc. 15-1 at 17–18). This argument is easily rejected for two reasons.

First, as discussed at length above, the stay in *Port Fund IV* is a temporary case management stay that is not absolute. While the stay does prevent GRSIA from engaging in reciprocal discovery or making submissions to the Grand Court, a review of the consent order and the evidence in the Record supports the conclusion that the evidence could be used and considered for several purposes. Indeed, the consent order expressly permits GRSIA to submit evidence to the Grant Court in certain circumstances, notwithstanding the stay. For example, GRSIA could submit the evidence obtained from TNB to the court in applying to lift the stay or it could submit the evidence in support of its arguments related to the relief to be granted to the Port Fund's limited partners. The evidence presented in this case simply does not support the argument that the stay in *Port Fund IV* unequivocally bars GRSIA from presenting any evidence whatsoever to the Grand Court.

And second, the relevant inquiry is whether the Grand Court is receptive to discovery obtained pursuant to § 1782 generally, not whether the foreign court would be receptive to foreign discovery in a specific case. As noted in the Order granting the Application, Cayman courts routinely accept evidence obtained through judicial assistance under § 1782. *See In re 507 Summit*, No. 1:23-MC-00427, 2024 WL 81842, at *3 (S.D.N.Y. Jan. 8, 2024) (citing *Lyxor*

*Asset Mgmt. S.A. v. Phoenix Meridian Equity Ltd*, 2009 CILR 553 (Sept. 24, 2009)); *Matter of de Leon*, No. 19-MC-0197, 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020) (finding the second *Intel* factor weighed in favor of granting *ex parte* application because "the Grand Court of the Cayman Islands will receive, accept, and consider the documents and information obtained in this proceeding"). Even if it were a case-specific inquiry, the evidence presented here shows that the Grand Court would likely be receptive to the information GRSIA seeks under a number of different scenarios. Thus, the second *Intel* factor weighs in favor of denying the Motion.

As to the third factor, the Court considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265; *see In re Application of Mesa Power*, 878 F. Supp. 2d at 1296, 1305 (S.D. Fla. 2012) ("Absent a persuasive showing that a [§] 1782 applicant like Mesa Power is actively seeking to circumvent the foreign tribunal's discovery methods . . . this [third] [*Intel*] factor does not counsel against [§] 1782 relief."). The Wellspring Parties argue that GRSIA is attempting to circumvent the consent order by seeking to obtain discovery that it is currently barred from seeking in the Cayman litigation due to the stay in *Port Fund IV*. (Doc. 15-1 at 18). This argument likewise hinges on the Wellspring Parties' narrow interpretation of the consent order and the terms of the stay and is rejected for the reasons articulated in the Court's discussion of the second *Intel* factor. To put it differently, GRSIA is prohibited from seeking discovery through the formal processes provided under Cayman discovery rules, but the consent order does not preclude GRSIA from obtaining evidence for other purposes. And to limit discovery in this matter pursuant to the consent order would conflate the case specific limits of the order with whether such information is prohibited by evidentiary rules or policy. The Court is not persuaded that GRSIA is seeking to circumvent the Grand Court's discovery methods.

Additionally, the Wellspring Parties argue that the Application seeks evidence that "would likely be unobtainable in the Cayman cases" because any bank records that post-date the commencement of *Port Fund IV* in 2022 would be regarded as irrelevant under Cayman law. (Doc. 15-1 at 18–19). To the extent the Wellspring Parties argue that the evidence GRSIA

seeks is not discoverable under Cayman law and therefore should not be permitted, that argument fails. It is well-established that "§ 1782 contains no foreign-discoverability requirement." *Mees*, 793 F.3d at 303; *see In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *7 (S.D. Fla. Dec. 18, 2018) ("[T]he fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules." (quoting *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013))). And district courts are cautioned against "delv[ing] deeply into an analysis of the discovery procedures of foreign countries." *In re Sampedro*, 2018 WL 5630586, at *4 (D. Conn. Oct. 30, 2018). "Proof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (citation modified). Therefore, the question presented is not whether the Grand Court would order the requested discovery if it had jurisdiction over TNB but whether there are Cayman proof-gathering restrictions that are akin to privileges that would prohibit the acquisition or use of the items sought. The Wellspring Parties have not made any argument that Cayman discovery procedures would preclude the type of discovery requested here. And in the absence of any showing that the discovery sought would circumvent Cayman proof-gathering restrictions that are akin to privileges, this factor weighs in favor of allowing discovery under § 1782. Accordingly, the third *Intel* factor weighs in favor of denying the Motion to Vacate.

As to the fourth and final factor, the Court considers whether GRSIA's discovery requests are "unduly intrusive or burdensome[,]" an inquiry that is guided by a similar standard as that used in ordinary civil litigation under the Federal Rules of Civil Procedure. *Intel*, 542 U.S. at 265; *see, e.g., Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir. 2009) ("[Section] 1782(a) directs judges to provide discovery assistance pursuant to the Federal Rules of Civil Procedure[.]"). Here, the requested discovery is (1) narrowly tailored as it relates only to Williams's and Wellspring's accounts, (2) temporally limited to the time period from February 2019 to present, (3) consists of documents and information maintained by TNB in the regular

course of business, and (4) directly relevant to the issues in the Cayman litigation. *See In re Application of Mesa Power,* 878 F. Supp. 2d at 1306 ("[N]o undue burden exists because the discovery requests being compelled through this Order are sufficiently tailored."); *In re Application of Habib*, No. 24-MC-23740, 2024 WL 4692161, at *3 (S.D. Fla. Nov. 6, 2024) (finding no undue burden where "the Witnesses likely maintain these records as a core part of their business records and, thus, they may search easily for, and produce them, at low cost and insignificant inconvenience."). Thus, the fourth and final *Intel* factor also weighs in favor of denying the Motion to Vacate.

In sum, the *Intel* factors weigh in favor of allowing GRSIA to obtain evidence from TNB, and the Court may therefore exercise its discretion in granting relief under § 1782. For these reasons, the Wellspring Parties' Motion to Vacate is due to be denied.

**B. Motion to Quash**

The Wellspring Parties move under Federal Rule of Civil Procedure 45(d) to quash the subpoena authorized by the Court's prior Order, arguing that (1) the subpoena is overly burdensome, and (2) requires the disclosure of sensitive information. (Doc. 15-1 at 19–20). Indeed, Rule 45 requires a court to quash a subpoena that "subjects a person to undue burden[,]" and permits a subpoena to be quashed if it requires "disclosing a trade secret or other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(3)(A)(iv), (B)(i).

As a threshold matter, GRSIA claims the Wellspring Parties do not have standing to challenge the subpoena served on TNB, a non-party. (Doc. 17 at 18). GRSIA is partially correct. Generally, "a party has no standing to object to a non-party subpoena on the basis that the subpoena is burdensome, oppressive, or overly broad." *Kimberly Regenesis, LLC v. Lee Cnty.*, No. 2:19-CV-538, 2021 WL 5285093, at *5 (M.D. Fla. Sept. 29, 2021) (citing *McCoy v. GEICO Gen. Ins. Co.*, No. 6:19-cv-353-Orl, 2019 WL 5391104, *2 (M.D. Fla. Aug. 14, 2019). Rather, a party has standing to challenge a non-party subpoena "if the party alleges a 'personal right or privilege' with respect to the subpoena or if a subpoena seeks irrelevant information." *McCoy*, 2019 WL 5391104, *2. And a party has a personal right or privilege with respect to its financial records and therefore has standing to challenge a subpoena for those records. *Gabriel*

*v. G2 Secure Staff, LLC*, 225 F. Supp. 3d 1370, 1372 (S.D. Fla. 2016). Here, the subpoena seeks the Wellspring Parties' financial records, and in addition to arguing that the subpoena is overly burdensome, the Wellspring Parties also assert that the discovery sought is irrelevant. (Doc. 15-1 at 20). Therefore, the Wellspring Parties have standing to challenge the subpoena.

The Wellspring Parties contend that the $60 million payment from the Port Fund's assets to Wellspring's account at TNB allegedly occurred in February of 2019, and so any documents beyond that date, or documents that post-date the commencement of GRSIA's *Port Fund III* and *IV* cases, are irrelevant to GRSIA's claims. (Doc. 15-1 at 20). GRSIA responds that documents post-dating the payment and the commencement of *Port Fund III* and *IV* are relevant to determining whether there has been any fraudulent dissipation of assets and the location of said assets. (Doc. 17 at 17); (Doc. 17-1 ¶ 23). The Court agrees that such documents would be relevant to GRSIA's claims of fraud and misappropriation in the Port Fund cases, which may yet be ongoing.

Further, the Wellspring Parties do not allege how production of the TNB bank records would require the disclosure of a "trade secret or other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(3)(B)(i). As for the concern over the production of sensitive personal and financial information, there is no reason why a stipulated protective order cannot be mutually agreed upon that would limit any use of the items produced for consideration in the foreign proceeding. That is, to the extent the Wellspring Parties believe that a protective order is required to safeguard the confidentiality of any discovery materials, the Parties may work cooperatively in submitting a protective order to the Court.

In sum, the Wellspring Parties have standing to challenge the subpoena only on the ground that the information it seeks is irrelevant. The Court, however, finds that the bank records sought are directly relevant to GRSIA's claims in the Cayman litigation. Further, as previously discussed, the subpoena was narrowly tailored to obtain documents relating to Williams's and Wellspring's accounts at TNB for the relevant time period and which are maintained by TNB in the regular course of business. For the foregoing reasons, the Motion to Quash is due to be denied.

## CONCLUSION

For the reasons set forth herein, the Wellspring Parties' Motion to Vacate and to Quash Subpoena (Doc. 15) is **DENIED**. It is further **ORDERED** that Thomasville National Bank, the subpoenaed entity, shall comply with the subpoena and produce documents responsive to the request **within twenty-one (21) days** of the entry of this Order, or **by no later than Wednesday, August 19, 2026.**

**SO ORDERED**, this 30th day of July 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**